IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.:

| | | |
|---|---|---|
| TANUA WALLACE as Administrator of<br>The Estate of FRANKIE JUNIOR JENNINGS | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
|      v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA; | ) | **COMPLAINT** |
| | ) | |
| ERIC TILLMAN in his official and<br>individual capacity; | ) | |
| | ) | |
| & | ) | |
| | ) | |
| RONALD L. DAVIS in his official<br>capacity as the Director of the<br>U.S. MARSHAL SERVICES, | ) | |
| | ) | |
|    Defendants. | ) | |

NOW COMES Plaintiff, by and through undersigned counsel complaining of acts and or omissions of the Defendants, and hereby demands a jury trial on the following:

## PRELIMINARY STATEMENT

1. In this action, Tanua Wallace, as the Administrator of the Estate of Frankie Junior Jennings, seeks compensation, punitive damages, and other relief arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution and under North Carolina law to redress Defendants' unlawful and unconstitutional conduct. Defendants' actions, as alleged herein, caused the injury and death of Plaintiffs and these actions constituted excessive, unlawful, and deadly force in violation the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures, and in violation of North Carolina law. Plaintiff should

be awarded compensatory and punitive damages, along with other relief, for these violations of his constitutional rights and violations of state law.

## PARTIES

2. Plaintiff Tanua Wallace is the duly appointed Administrator of the Estate of Frankie Junior Jennings and a resident of Mecklenburg County, North Carolina.

3. Upon information and belief, Defendant Ronald L. Davis in his official capacity as they Director of the U.S. Marshal Services, and (hereinafter Director Davis), was the duly appointed Director of the U.S. Marshal's Service and was acting within the scope of his employment and under color of law at all times pertinent to the incidents complained of herein. Director Davis official duties are non-delegable.

4. Eric Tillman in his official capacity as a U.S. Marshal (hereinafter Marshal Tillman) was at all relevant times employed as a marshal for the U.S. Marshal service and was acting in the course and scope of his official duties as a U.S. Marshal officer and under color of federal and state law.

## JURISDICTION AND VENUE

5. This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution. This case also arises under the provisions of 42 U.S.C. §§ 1983 and 1988.

6. Original jurisdiction over this case is conferred upon this Court pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and the United States Constitution because this case arises under the Constitution and laws of the Unit ed States. Original jurisdiction over this case is also conferred upon this Court pursuant to 28 U.S.C. § 1343(a) because this action is to redress

the deprivation by Defendants, under color of state and federal law, of rights, privileges, and immunities granted to the Decedent by the United States Constitution.

7. This Court has pendent jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1393(a). Plaintiff and one or more Defendants reside in this District, and the claims asserted herein arose in this District.

9. This claim is made pursuant to the Federal Tort Claims Act, and this cause of action arises from the conduct of a federal employee of the U.S. Marshal Service.

10. This action arises from an arrest and use of force that was executed in Mecklenburg, Charlotte, North Carolina that occurred on March 23, 2021.

11. On the date of the incident, Eric Tillman (hereinafter Defendant Tillman) was employed by the United Stated Department of Justice through the United States Marshals Service and was performing his duties as an employee of the United States and all actions or omissions attributed to Defendant Tillman in this action were within the scope of his federal employment.

12. Pursuant to 28 U.S.C.A. § 1391(b)(2), venue in the Western District of North Carolina is appropriate because the cause of action occurred in and the federal employee, based on information and belief, was employed in the Western District.

13. Plaintiff has exhausted their administrative remedies as required by statue.

14. On August 12, 2021, Plaintiff Tanua Wallace submitted her claim in the amount of $4,250,000.00 to the U.S. Department of Justice and the U.S. Marshals Service.

3

15. On September 8, 2021, the Department of Justice and on September 24, 2021, the United States Marshals Service the receipt of Plaintiff's Administrative Tort Claim was conferred.

16. To date, the claim has not been accepted or rejected by the U.S. Department of Justice or the U.S. Marshal Service.

17. The grossly negligent acts, omissions, and liability of all named Defendants including their agents, principles, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, actual authority, apparent authority, actual agency, ostensible agency and/or *respondeat superior*, as well as the acts and/or omissions of the above-named Defendants, were a direct and proximate cause of the injuries, damages, and losses sustained by the Plaintiff.

18. Through custom and practice, Defendants have waived any official, sovereign, or governmental immunity to which any Defendants may have otherwise been entitled. Any assertion of said immunity is a violation of Plaintiff's equal protection and due process rights under the Fourth and Fourteenth Amendment of the United States Constitution, and Article I, Section 19 of the North Carolina Constitution.

19. At all times mentioned herein, Defendants were acting collectively and in concert under color of law.

## **FACTS**

20. Frankie Jennings (hereinafter "Jennings"), was shot, injured and killed by Eric Tillman (Tillman) on or around March 23, 2021, in broad daylight at a Citgo gas station in Charlotte.

21. Jennings was killed in front of his fiancée Nayja Johnson and his minor son.

22. Tillman is a Senior Inspector of the United States Marshals Service.

4

23. Tillman was part of the U.S. Marshals Services' Carolinas Regional Fugitive Task Force (hereinafter "CRFTF").

24. One of the main missions of the CRFTF is to apprehend their "targets" and not kill them.

25. Other relevant members of the CRFTF included Mark Ruffin of Mooresville Police Department, Matthew Harris of the Gaston County Police Department, Jamie Terry of the North Carolina Department of Public Safety, Tate Mills of the Union County Sheriff and Stephen Helms of the Monroe Police Department.

26. The CRFTF was attempting to serve warrants for state charges on Jennings.

27. Based on information and belief, the task force had not been under operation for more than two years before the March 23, 2021 killing of Jennings, and had not had sufficient and adequate training regarding the use of force.

28. No member of the CRFTF was wearing body-worn camera.

29. Based on information and belief, Tilman developed information that Frankie Jennings was staying at a Homewood Suites hotel room, in his girlfriend's name.

30. As Tillman, was surveilling the parking lot of the Homewood Suites in Charlotte, he observed Jennings driving a black Mercury Mariner (hereinafter "Mariner").

31. Based on information and belief, Tillman accompanied by other members of the CRFTF using multiple unmarked vehicles followed Jennings through Charlotte until they reached a car repair shop where Tillman was able to identify Jennings through binoculars.

32. While the Plaintiff was stationary and stopped at the repair shop, Tillman and the other members of the CRFTF failed to make contact with Plaintiff, failed to identify themselves as law enforcement officers, and failed to attempt the peaceful surrender or detention of Plaintiff.

33. Tillman decided not to call for multiple backup Charlotte Mecklenburg Police Department (hereinafter "CMPD") units available to aid in the peaceful apprehension of Jennings as he stood for minutes outside of his vehicle while at the car repair shop.

34. Jennings was observed entering a Mercedes automobile and driving from the repair shop.

35. Tillman had knowledge that based on his surveillance that Jennings and Johnson traveling in separate vehicles and would return to the Homewood Suites hotel, where Jennings could be detained and arrested.

36. Member of the task force observed the Mercedes driven by Jennings and the Mariner driven by Johnson pull into a Citgo gas station at the intersection of the Plaza and Parkwood Avenue, a residential and densely populated area of Charlotte.

37. Tillman and other task force officers set up a perimeter around Jennings and observed Jennings filling Johnson's vehicle with gasoline while his vehicle the Mercedes was parked parallel to Johnson's vehicle separated by the gasoline pumps.

38. Tillman observed Jennings standing at the gasoline pump, and Johnson seated in her vehicle.

39. Tillman assessed Johnson's vehicle and the gasoline pump both of which were to the right passenger side of the Jennings' vehicle as barriers that would limit and confine Jennings' movement.

40. Despite having no prior plan for safely executing the arrest at this location and the lack of urgency to pursue Jennings who was under surveillance, Tillman ordered the execution of a dangerous tactical maneuver known as a "vehicle containment."

41. Tillman and others members of the task force executed the vehicle containment maneuver with unmarked vehicles in wanton disregard to the safety and life of Plaintiff.

6

42. Tillman and task force members failed to perform a briefing to coordinate their efforts, minimize safety risks and limit the use of unnecessary force.

43. A "Vehicle Containment" is the blocking of a target's vehicle often with the use of direct intentional contact by the law enforcement vehicle with a target's vehicle.

44. Vehicle containment is inherently dangerous because it uses the element of surprise, unmarked law enforcement vehicles and often involves the use of physical force in the prior to any verbal commands for compliance.

45. Although there was a warrant to arrest Jennings, Tillman did not have the right to use unnecessary and unlawful deadly force.

46. Officer Tate Mills was driving a black unmarked pickup truck. Defendant Tillman was driving an unmarked blue Tahoe.

47. To block the rear exit of Johnson's vehicle, Tillman directed Mills position his unmarked truck behind the Mariner and Jennings.

48. Officer Mills abruptly stopped his unmarked truck to the rear and passenger side of the Mariner.

49. Mills exited the unmarked vehicle wearing a baseball cap, blue jeans, and a green vest and raised his firearm towards Jennings.

50. Simultaneous to Mills' maneuver, Defendant Tillman positioned his blue Tahoe quickly to the left and rear of Jennings' vehicle.

51. Defendant Tillman excited the unmarked vehicle wearing a black t-shirt, green vest and jeans and raised his firearm towards Jennings.

52. Jennings placed his hands up and then retreated inside the Mercedes, as Mills approached Jennings from behind.

53. Defendant Tillman and Officer Mills exited their vehicle and quickly proceeded to the driver's side door of Jennings' vehicle door.

54. Defendant Tillman and Officer Mills were not wearing traditional law enforcement uniforms or operating marked patrol vehicles and instead wore tactical gear and operated unmarked vehicles.

55. A customer in the parking lot, Austin Chasteen witnessed Defendant Tillman kick the door close preventing Jennings from peacefully and safely exiting the vehicle.

56. Defendant Tillman kicked to prevent the driver's door from opening while Officer Mills attempted to the open the driver's door.

57. At no time did Defendant Tillman or Officer Mills announce themselves as police officers or give a verbal command to Jennings.

58. When Mills and Tillman attempted to gain entry to Jennings' vehicle through force, it was not readily apparent to Jennings that he was being arrested by law enforcement officers.

59. When Mills and Tillman quickly approach Jennings, he was placed in fear for his personal safety, placed his hands in the air and retreated to the safety of his vehicle.

60. As Mills and Tillman attempted to grab Jennings who was seated in the Mercedes, two additional unmarked vehicles approached from the left and right front of Jennings' vehicle.

61. As Jennings' vehicle moved forward, Defendant Tillman discharged his weapon three times striking, injuring and killing Jennings.

62. As the Mercedes begins to move forward, the vehicles operated by the task forced were properly positioned to contain the target vehicle.

63. After the Mercedes made contact with one of the task force vehicles, Jennings and his vehicle was contained.

8

64. After Jennings and his vehicle were contained, Defendant Tillman gave Jennings no opportunity to surrender and gave no verbal commands to exit the vehicle.

65. Tillman wantonly and malicious used deadly and unnecessary force.

66. In violation of his rights, Tillman shot Jennings three times because he believed Jennings was going to elude containment and arrest.

67. Tillman inaccurately and intentionally misrepresented that the use of deadly force was necessary because Mills fell down and was going to be dragged by the target vehicle.

68. Tillman inaccurately and intentionally misrepresented that the use of deadly force was necessary because he feared for his personal safety.

69. Surveillance footage shows that at no point did Mills fall on the ground nor was he dragged by the target vehicle.

70. Frankie Jennings was killed on his birthday in the presence of his son and girlfriend.

## I. NEGLIGENCE AND GROSS NEGLIGENCE

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

72. Director of U.S. Marshals Services, Ronald L. Davis owed a duty to Plaintiff and the general public to ensure that its agents, deputies, investigators and employees, performed their duties in a manner as to avoid the use of excessive and deadly force.

73. Defendants have a duty to protect the individuals from excessive force resulting in death.

74. Defendants breached these duties with regard to Plaintiff in several ways, including but not limited to, the following:

9

a. Director Davis failed to ensure that Defendant Tillman was adequately trained, supervised, and instructed on the prescribed procedures for reasonable force and arrest;

b. Director Davis failed to ensure that the U.S. Marshals Services established reasonable and appropriate policies and procedures governing arrests;

c. Director Davis failed to ensure that the U.S. Marshals Services established reasonable and appropriate policies regarding the hiring, promotion, and retention of law enforcement personnel;

d. Defendants were careless and negligent in such other ways as may be identified during the course of discovery and/or trial.

75. Defendants' negligent acts and omissions are direct and proximate cause of the severe and permanent injuries for which Plaintiff is entitled to recover.

76. At all times relevant to the incident alleged herein, Defendant Tillman committed the negligent acts and omissions alleged while acting within the course and scope of their employment and/or agency with the U.S. Marshals Services and Director Davis. As such, Director Davis is liable for the negligent acts and omissions of Defendant Tillman and their negligence is imputed to the Director Davis through the doctrines of agency, vicarious liability, and *respondeat superior*.

77. Plaintiff is entitled to recover from the Defendants, jointly and severally, an amount in excess of Twenty-five Thousand Dollars ($25,000.00) as a result of Defendants' negligence, gross negligence, and/or willful and wanton negligence.

78. Defendant Tillman did not consider or comply with the standard of care for high-risk law enforcement operations.

79. Tillman had just arrived at the Homewood Suites to set up surveillance and hopefully locate Jennings.

80. Upon locating Jennings, Tillman followed Jennings and Johnson through the city of Charlotte to pickup the Mercedes.

81. Tillman did not believe that Jennings or Johnson were aware that he and the CRFTF were following them and therefore had no reason to attempt to come up with a plan in the spur of the moment.

82. Tillman had considered attempting to apprehend Jennings while he was at a tire repair shop because he was just standing there although he had just begin surveillance of Jennings.

83. Defendants should have known that a vehicle containment sometimes involves a vehicular assault which is when law enforcement without warning rams and boxes in a subjects vehicle from multiple sides.

84. A vehicular assault positions unmarked vehicles in front of and in the back of the subject vehicle and traps the occupants of the vehicle through an intentional car crash.

85. Defendants should have known that these tactics cause chaos and confusion and can be violent in nature.

86. Defendants did not identify themselves as law enforcement officers before using force against Jennings.

87. A vehicular assault or containment should not have been attempted.

88. Deadly force should not have been used against Jennings while he was under surveillance and fearful of unmarked law enforcement vehicles.

89. Tillman had the ability to call off vehicular containment but consciously proceeded because Jennings was outside of the car, just pumping gas for Johnson.

90. Tillman directed other members of the taskforce to contain Jennings' vehicle.

91. No plan was agreed upon regarding the safety of Jennings, Johnson and her son who were consciously and deliberately included in the freestyled plan by Tillman and the CRFTF.

92. Tillman and other members of the task force place Jennings and Johnson in reasonable apprehension of battery from multiple vehicles and individuals who failed to identify themselves as officers.

93. Jennings was summarily shot and killed prior to the officers identifying themselves

94. Jennings was shot and force was used against him prior to giving him an opportunity to surrender or comply with commands.

95. No plan was agreed upon regarding the foreseeable seizure of Johnson who was included in the vehicle containment operation.

96. The U.S. Marshals' policy directives instruct them to use the minimum force necessary, but that deadly force may be used only when necessary; that is when there is a reasonable belief that the Jennings posed an imminent danger of death or serious physical injury to another person.

97. The U.S. Marshals policy directives instructs that deadly force may not be used solely to prevent the escape of a fleeing suspect.

98. The U.S. Marshals policy directives instructs that firearms may not be discharged at a moving vehicle unless a person in the vehicle is threatening the officer or another person with deadly force by means other than the vehicle; or the vehicle is operated in a manner that threatens to cause death or serious physical injury to the officer or others, and no objectively reasonable means of defense appear to exist, which includes moving out of the path of the vehicle.

99. Tillman admitted that he did not see Jennings grab a gun.

100. Both Officer Mills and Defendant Tillman were at the driver's side of the Mercedes and out of the direct path of the Mercedes.

101. The nature of vehicle containment and vehicle assault is characterized by using task forces officers' vehicles to make direct and intentional vehicular contact between task force officers and a subject, there was no immediate threat of serious injury from a car moving from park and into gear at this speed.

102. Tillman shot Jennings who was inside the Mercedes three times while not being in the direct path of the vehicle, while not seeing Jennings grab the gun which was well within his reach, and while the car moved forward without significant or dangerous speed.

103. No member of the CRFTF reported hearing the engine rev before it made contact with the Tahoe.

104. The above paragraphs show that Defendants fell below the standard of care necessary for high-risk operations.

105. The above paragraphs show that Defendants consciously disregarded the foreseeable risks of causing severe injury and death to Plaintiff.

106. The above paragraphs show that Defendants consciously and wantonly disregarded the foreseeable risks of causing damages and injuries to Plaintiffs,

107. This reckless and willful disregard of Plaintiffs' rights and safety constitutes gross negligence.

108. In the alternative, Defendants failure to comply with the standard of care in performing the attempted seizure of Jennings set out in all preceding paragraphs would constitute negligence.

## II.  NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANT MARSHAL ERIC TILLMAN, in his individual and official capacities

109.    The preceding paragraphs are hereby incorporated by reference and re-alleged as if fully set forth herein.

110.    Defendant Marshal Eric Tillman individually and in his official capacity as a Marshal under the supervision of Director Davis, was negligent at the time and place alleged hereinabove, and his acts and omissions of negligence include, but are not limited to, the following:

   a.  He failed to possess the necessary training and experience to serve as a Marshal for the U.S. Department Of Justice, and respond to an arrestee with reasonable force;

   b.  He failed to use reasonable force with Plaintiff when arresting him;

   c.  He failed to use less combative, provocative, and aggressive methods of communication with the Plaintiff during his arrest resulting in his death; and

   d.  He failed to allow Jennings to exit the vehicle or surrender for arrest;

   e.  He failed to give verbal commands to surrender or stop;

   f.  He was otherwise careless and negligent in such other ways as may be revealed by discovery or during the trial of this action.

111.    Defendant's actions were malicious, intentional, unreasonable, willful and wanton, grossly negligent, and Defendant acted outside the scope of his duties as assigned by U.S. Marshals Services, Ronald L. Davis and with conscious and reckless disregard for the lives and safety of others, including Plaintiff. Based on Defendant's conduct, Defendant is not entitled to immunity from personal liability and may be sued in his individual capacity.

112.    The negligent acts and omissions of Defendant Tillman as described hereinabove, were a proximate cause of the injury to the Plaintiff.

14

113. The acts and omissions of Defendant Tillman as described hereinabove, were willful, wanton and/or reckless, and amount to gross negligence.

114. Defendant Tillman was aware of the probable consequences of his conduct due to the use of excessive force against Plaintiff, which resulted in severe injuries.

115. The negligence of Defendant Tillman is imputed by law to the U.S. Marshals Services and U.S. Department of Justice by reason of Defendant Tillman's agency relationship with, and employment by, the U.S. Marshals Services and U.S. Department Of Justice at the time and place that the incident occurred, under the doctrine of *respondeat superior.*

116. Plaintiff is entitled to recover from the Defendants, jointly and severally, an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) as a result of Defendant Tillman's negligence, gross negligence, and/or willful and wanton negligence.

### III.    VIOLATION of  42 U.S.C.A § 1983

117. Plaintiff restates the allegations contained in each and every preceding paragraph as though fully set forth here.

118. By Defendants' actions and means chose to confront Plaintiff, they acted with willful disregard for Plaintiff's safety and used their authority to create a dangerous situation making Plaintiff more vulnerable to harm than was reasonable under the circumstances.

119. Plaintiff's death was foreseeable, and a direct result of the danger created by the way Defendants' confronted and physically handled Plaintiff when they attempted to place him under arrest.

120. By their actions taken under the color of law, Defendants breached that duty when they intentionally, willfully, with wanton recklessness, or negligently deprived Plaintiff of *his* clearly established statutory and Constitutional rights, privileges, and immunities guaranteed by the Constitution of the United States of America, including but not limited to: *his* right to be free from excessive force, as guaranteed by the Eighth Amendment of the Constitution of the United States of America and the right to be free from emotional distress and bodily injury.

121. Defendants, and each of them, individually and in their official capacity, are liable to Plaintiff for damages, both general and specific, and for punitive damages under 42 U.S.C.A. § 1983.

## IV. FAILURE TO TRAIN (42 U.S.C.A § 1983)

122. Plaintiff restates the allegations contained in each and every preceding paragraph as though fully set forth here.

123. By their actions and inactions with respect to the training, supervision, and discipline of the officers arresting Plaintiff, Defendants acted knowingly and with deliberate indifference to the rights of Plaintiff.

124. Defendants, and each of them, individually and in their official capacity, are liable to Plaintiff, for damages both general and specific and for punitive damages under 43 U.S.C.A. § 1983.

## V. EXCESSIVE FORCE
## FEDERAL CLAIM – 1983- FORTH AMENDMENT AGAINST INDIVIDUAL DEFENDANT TILLMAN

125. Plaintiff restates the allegations contained in each and every preceding paragraph as though fully set forth here.

126. Defendant Tillman deprived Plaintiff of the rights, privileges and immunities secure by the Constitution and laws of the United States by subjecting him to excessive force under the Fourth Amendment.

127. Particularly, Defendant Tillman knew or should have known that the application of excessive force would cause the inflection of great pain and would ultimately cause death.

128. Defendant Tillman's use of force was unreasonable under the circumstances.

129. As a direct and proximate result of this use of excessive force, Plaintiff suffered serious personal injuries and death.

## VI. COMMON LAW BATTERY (AGAINST DIRECTOR DAVIS AND MARSHAL TILLMAN)

130. Plaintiff re-alleges and reincorporates the preceding paragraphs as if fully set forth herein.

131. Defendant Tillman, by forcibly restraining Plaintiff and using excessive force as described above, intentionally touched Plaintiff's person without his permission in a harmful manner.

132. At the time that Defendant Tillman committed the battery, they were acting within the course and scope of their employment or agency with U.S. Marshals Services and U.S. Department Of Justice.

133. Defendant Tillman acted with malice and corruption in committing a battery against Plaintiff as evidenced by, *inter alia*, their callous behavior in viciously injuring and ultimately causing the death of Plaintiff, by firing upon the Decedent even though he was wielding no weapons and had no means of escape.

134. Director Davis is liable for the conduct of Defendant Tillman and such conduct is imputed to Director Davis through the doctrines of agency, vicarious liability, and *respondeat superior*.

135. As a direct and proximate result of the battery described above, Plaintiff sustained severe injuries and death that was totally preventable and unnecessary. Consequently, Plaintiff is entitled to recover compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) from Defendants, in their individual and official capacities.

136. Furthermore, Plaintiff, is entitled to recover punitive damages as set out in N.C. Gen. Stat. § 28A-18-2(b)(5) to punish these Defendants for their illegal, egregiously wrongful, reckless and willful misconduct committed and to deter others from engaging in similar conduct in the future.

## VII.   SURVIORSHIP CLAIM

137. The preceding paragraphs are incorporated by reference and re-alleged as if fully set forth herein.

138. Alternatively, pursuant to Rule 8(e)(2) of the Federal Rules of Civil Procedure, Plaintiff pleads that the acts and omissions of Defendants in violation of the standard of care were the proximate cause of Decedent's pain and suffering and violation of state and federal Constitutional rights.

139. Plaintiff is entitled to recover punitive damages from the Defendants jointly and severally in an amount to be determined by a jury, but not less than Twenty-Five Thousand Dollars ($25,000.00).

## VIII. 42 U.S.C. § 1983 LIABILITY OF DEFENDANTS, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES

140. Plaintiff hereby incorporates the allegations contained in the prior paragraphs of this Complaint, by reference thereto, as if herein fully set forth.

141. The unconstitutional actions and/or omissions of Defendants complained of herein were performed under color of state law for purposes of a valid claim pursuant to 42 U.S.C. § 1983 for the violation of constitutional rights.

142. Defendants were required pursuant to the due process clause of the Fourteenth Amendment and the Fourth Amendments prohibition against arrest without probable cause – to not violate the civil rights of Plaintiff.

143. The above-stated deliberate indifferent conduct of Defendants, caused such severe injuries to Plaintiff that said indifference amounted to a "punishment" in violation of the Eighth Amendment of the United States Constitution and the due process clause of the Fourteenth Amendment of the United States Constitution.

144. Defendant officers knew or should have known that excessive force would cause the death of Plaintiff.

145. Defendant officers fired upon the Decedent, causing to his death, even though his vehicle was blocked him, he had no means of escape, and no weapons.

146. Defendants acted with reckless disregard and deliberate indifference to rights of Plaintiff.

147. Defendants' conduct deprived Plaintiff of his constitutional rights described herein and were engaged in with knowing, malicious, and conscious and reckless disregard for the rights and safety of Plaintiff.

19

148. Plaintiff seeks and is entitled to compensatory damages for the physical and emotional distress, medical bills, lost wages, permanent impairments, mental anguish, humiliation, and other compensable injuries suffered by Plaintiff as a result of the acts and omissions of the Defendants who have been sued in their individual capacities.

149. Plaintiff is entitled to compensatory damages against the named Defendant officers in their individual capacities because they acted with deliberate, willful, and wanton disregard of Plaintiff's rights and privileges.

150. Plaintiff also seeks and is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

### IX. <u>Violation of North Carolina State Constitution</u>

156. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

157. Upon information and belief, the North Carolina legislature enacted Section 15A-401(b), at least in part, to promote the safety and protection of the general public by delineating the situations in which officers are permitted to use reasonable force.

158. Defendant Tillman did not have authorization to use deadly force because there was not reasonable and imminent belief that Jennings was using deadly physical force.

159. Defendants violated Plaintiff's Article I Section 20 of the North Carolina Constitutions right to be free from unlawful seizures by excessive and deadly force.

160. The use of deadly and unreasonable force against Jennings was a foreseeable and precipitated by Defendant's failing to give verbal commands, failing to identify themselves as officers and failing to allow Jennings to exit the vehicle.

161. Defendants acted willfully, wantonly, and with reckless disregard for Plaintiff's constitutional rights and safety by their acts or omissions in the complained of in the preceding paragraphs.

162. Pursuant to Article I Sections 20 and 36, Plaintiff seeks to vindicate his state constitutional rights where no other remedy may be available.

163. Plaintiff is entitled to recover damages.

## X.     PUNITIVE DAMAGES

164. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

165. Defendant Tillman's conduct was willful, wanton, and done with reckless disregard for Johnson's rights.

## JURY DEMAND

166. Plaintiff requests a trial before a jury of his peers.

## PRAYER FOR RELIEF

Wherefore upon trial of this matter, Plaintiff prays that the court enter a judgment in his favor against Defendants jointly and severally.

1. Compensatory damages to be determined at trial but in excess of $25,000.00.

2. Punitive Damages.

3. Attorney Fees under 42 U.S.C. § 1988 and/or N.C.G.S. § 6-21.7

4. Any other relief the Court may deem just.

This the 25th of March 2024.

/s/ Charles Everage
Charles Ali Everage, NCSB #28267
**Hunter & Everage, PLLC**
Post Office Box 25555
Charlotte, North Carolina 282229

(p) 704-377-9157
(f) 704-377-9160
(e) cae@hunter-everage.com;
glm@hunter-everage.com

Ken Harris, NCSB #15904
**Ken Harris & Associates, P.A.**
Post Office Box 32126
Charlotte, North Carolina 28232
(p) 704-343-2620
(f) 704- 343-0927
ken@khalegal.com;
cheryl@khalegal.com
*Attorneys for Plaintiff*

22